UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| TIRE DISCOUNTERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 3:19-CV-00483-DCLC |
| | ) | |
| vs. | ) | |
| | ) | |
| PEOPLE'S DEVELOPMENT COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Tire Discounters' ("Tire Discounters") Motion to Exclude Certain Testimony and Opinions of John R. Anderson, P.E. [Doc. 34] and Motions in Limine [Docs. 49, 51]. Defendant People's Development Company, Inc. ("PDC") filed a response in opposition to the motion to exclude testimony [Doc. 41] and Tire Discounters filed a reply [Doc. 47]. PDC has also filed responses to the motions in limine [Docs. 53, 54]. The motions are now ripe for resolution.

1. **BACKGROUND**

Tire Discounters and PDC (collectively "the Parties") entered into a lease agreement on December 14, 2018 (the "Lease") in which Tire Discounters planned to open and operate a retail and service facility on PDC's land [Doc. 1, ¶ 9; Doc. 1-1, pg. 1]. Under the Lease, PDC was to build a commercial building on its real property for Tire Discounters to occupy and Tire Discounters was to pay rent to PDC for its use [Doc. 40, ¶ 1]. A third-party contractor provided the parties with a proposal for the construction which came in higher than the estimated budget agreed upon in the Lease. After a breakdown in communication between the Parties on which of

1

them should be responsible for the cost overruns, Tire Discounters filed this lawsuit against PDC [Doc. 1]. Tire Discounters claims that PDC intentionally failed to obtain the permits necessary to begin the construction project [Doc. 1]. PDC filed an answer and countercomplaint [Doc. 7] which it later amended [Doc. 24] in which it raises various affirmative defenses and alleges that Tire Discounters breached the Lease by refusing to take responsibility for the cost overruns.

## II. LEGAL STANDARD FOR *DAUBERT* MOTIONS

The Supreme Court in *Daubert* held that Federal Rule of Evidence 702 requires that trial courts perform a "gate-keeping role" when determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Rule 702 provides:

> a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case

Fed. R. Evid. 702. Rule 702 applies equally to scientific testimony and other types of expert testimony based on technical or specialized knowledge. *Kumho Tire Co., LTD. V. Carmichael*, 526 U.S. 137, 147–49 (1999).

The proponent of expert testimony has the burden of establishing that such testimony is reliable. *Rose v. Matrixx Initiatives, Inc.*, No. 07-2404-JPM/TMP, 2009 WL 902311, at *5 (W.D. Tenn. Mar. 31, 2009). To determine reliability, courts focus on "whether the reasoning or methodology underlying the testimony is scientifically valid." *Decker v. GE Healthcare Inc.*, 770 F.3d 378, 391 (6th Cir. 2014). The Supreme Court in *Daubert* set out the following non-exclusive list of factors to assist courts in their determination of whether an expert's testimony is reliable: "(1) whether the theory or technique can be or has been tested; (2) whether it 'has been subjected

to peer review and publication'; (3) whether there is a 'known or potential rate of error'; and (4) whether the theory or technique enjoys general acceptance in the relevant scientific community." *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (quoting *Daubert*, 509 U.S. at 593–94). The *Daubert* factors "are not dispositive in every case" and should be applied "only where there are reasonable measures of reliability of expert testimony." *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001).

III. ANALYSIS

A. **Tire Discounters' Motion to Exclude Certain Testimony of John R. Anderson, P.E. [Doc. 35]**

PDC hired an expert, John R. Anderson, P.E. ("Mr. Anderson"), a licensed Professional Engineer in Tennessee, to provide "observations and opinions" on the construction project that gave rise to this lawsuit [Doc. 35-1]. Mr. Anderson completed an "Expert Report" on July 2, 2020 which was revised on February 22, 2021 [*Id.*]. Tire Discounters does not dispute that Mr. Anderson is qualified to opine about "the civil engineering of the construction project and the numerical differences between the estimated cost in the Lease and the anticipated actual cost," but moves to exclude seven of the enumerated observations and opinions contained within his report [Docs. 34, 35].

First, Tire Discounters seeks to exclude numbers 14 and 25 of the report as improper legal conclusions related to contract interpretation [Doc. 35, pg. 5]:

> 14. The Lease [Section 3.2] provides that if the actual construct cost exceed the Lease Estimated Cost, and such additional costs are the result of the differences in the "Building" as shown on the Final Plans as compared to the Outlines Specifications, TD shall be responsible for the difference between such actual cost and the Lease Estimated Cost.
>
> 25. Given the documents and information provided by PDC and its attorney, and based upon my professional knowledge and experience, it is my

opinion that TD should incur the additional "Building" and "Site Work" hard cost that were not included in the Lease Estimated Budget.

[Doc. 35-1, pgs. 20-21; Doc. 35, pg. 6].

1. **MOTION TO EXCLUDE NO. 14 OF THE REPORT**

A "legal conclusion" is an expert's "opinion on the ultimate question of liability." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). When the dispute involves a contractual obligation, interpretation of that contract is a legal conclusion and is not a proper subject for an expert opinion. *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 301-02 (6th Cir. 1998) ("'[E]xperts may not testify as to the legal effect of a contract."). In number 14, Mr. Anderson recites Section 3.2 of the Lease but does not offer an opinion or interpretation of that contract. However, the Sixth Circuit has expressly held that "recitation of legal principles…is not appropriate expert testimony." *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 592–93 (6th Cir. 2014) (citing *Berry*, 25 F.3d at 1353). Experts may be qualified "to assist the trier of fact" but are "not qualified to compete with the judge in the function of instructing the jury…." *Berry*, 25 F.3d at 1354 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)). For these reasons, number 14 of Mr. Anderson's Expert Report is inappropriate for an expert opinion as it is merely a recitation of the Lease agreement, and it must be redacted. Tire Discounters' motion to exclude is GRANTED as to number 14 of Mr. Anderson's report.

2. **MOTION TO EXCLUDE NO. 25 OF THE REPORT**

Number 25 contains an inadmissible legal conclusion, but Mr. Anderson's testimony could be limited to describe what the terms "Building" and "Site Work" normally mean in the construction industry. This, without his conclusion that Tire Discounters should incur the additional cost, could be helpful to the jury. *United States v. Geiger,* 303 F.App'x 327, 330-31 (6th Cir. 2008 ("expert testimony as to legal conclusion may be appropriate in certain limited

circumstances . . . [so] long as [the] testimony would not determine an ultimate issue before the jury."). Therefore, number 25 shall be redacted, with the understanding that it is appropriate at trial to question Mr. Anderson about the definition of the terms "Building" and "Site Work" based on his knowledge and expertise in the construction industry. Tire Discounters' motion in limine as to number 25 of Mr. Anderson's report is therefore GRANTED.

**3.     MOTION TO EXCLUDE NO. 17 and 18 OF THE REPORT**

Next, Tire Discounters moves to exclude number 17 and 18 of the report as inadmissible legal conclusions related to whether the project construction plans were permittable under City of Knoxville ordinances:

> 17.     It is my understanding that TD claims that the final revised version of the Final Plans was approved for permitting by the City of Knoxville on or around August 21, 2019.
>
> 18.     It is my opinion that the Final Plans identified as "TD Bearden_BidPermit_20190222.pdf" and submitted to PDC on or around February 22, 2019 were not permittable to commence construction of the TD Building.

[Doc. 35, pg. 8; Doc. 35-1, pg. 20].

Tire Discounters argues that whether construction plans are permittable "lies within the municipal jurisdiction and authority of the City of Knoxville," and that Mr. Anderson should not "substitute his own judgment of permitability for that of the [City]." [Doc. 35, pg. 9]. Though the Court agrees with Tire Discounters that interpretation of the meaning of a city ordinance is not proper in an expert opinion, number 17 does not offer a legal conclusion. It is instead an observation that the final version of the building plans was approved for permitting. The credibility of this statement is not for the Court to decide at this stage but is rather a question for the finder of fact. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). Therefore, number 17

shall not be excluded on Tire Discounters' motion. Tire Discounters' motion is DENIED as to number 17 of Mr. Anderson's report.

Number 18 does opine that the Final Plans were not permittable, but with the proper foundation at trial, Mr. Anderson may be qualified to give such an opinion based on his knowledge and experience of construction projects and permit requirements in Knoxville. Therefore number 18 shall not be excluded, and Tire Discounters' motion to exclude number 18 is DENIED at this time. Tire Discounters can renew its objection to this testimony at trial.

**4.    MOTION TO EXCLUDE NOS. 19, 23, AND 24 OF THE REPORT**

Tire Discounters next seeks to exclude numbers 19, 23, and 24 from Mr. Anderson's report as speculative and fundamentally unsupported testimony.

> 19.    It is my understanding that RTC provided PDC with its cost proposal to construct the Building pursuant to [Tire Discounters'] final version of the Final Plans on or about August 9, 2019.
>
> 23.    It is my opinion that the actual cost to construct the [Tire Discounters] Building could not be provided to PDC unless or until the Final Plans were approved for permitting.
>
> 24.    It is my opinion that RTC could not provide an accurate estimate of the actual cost to construct the [Tire Discounters] Building based upon the [Tire Discounters] prototype Outline Specifications attached to the Lease or the initial version of the Final Plans.

[Doc. 35-1, pg. 21].

Tire Discounters argues that "PDC provided Mr. Anderson with the erroneous assumption that RTC could not, and did not, provide PDC with the actual cost estimate for the construction [of] the Final Plans until August 9, 2019" and because of this all of his testimony and opinions concerning "the timing for calculating the actual cost estimate" and the adequacy of the Final Plans should be excluded [Doc. 35, pg. 10]. But, as stated above, this goes to the weight of the expert's

opinion not its admissibility. For these reasons, numbers 19, 23, and 24 of Mr. Anderson's report shall not be excluded. Tire Discounters' motion as to these numbered statements is therefore DENIED.

**B.     Tire Discounters' Motions in Limine [Docs. 49, 51]**

**1.     FIRST MOTION IN LIMINE [Doc. 49]**

In its first motion in limine [Doc. 49], Tire Discounters moves to exclude (1) "all evidence and argument of a non-existent power of attorney to sign construction permit documents on PDC's behalf[,]" and (2) "all evidence and argument of a non-triggered purported default with damages under Section 21 of the Lease at issue." [Doc. 50, pg. 1].

**A.     MOTION IN LIMINE RE: POWER OF ATTORNEY**

As to the first, Tire Discounters argues that PDC intends to present evidence at trial concerning a power of attorney it allegedly authorized to sign construction documents on its behalf [Doc. 50]. Tire Discounters argues that such evidence is inadmissible under Federal Rules of Evidence 401 and 403 because it would be misleading and confusing to the jury [Doc. 50, pgs. 3-7]. As grounds for exclusion, Tire Discounters argues that PDC never authorized anyone to sign documents on its behalf, only to "submit" them, and that presentation of documents related to the power of attorney would be misleading [Doc. 50, pg. 6]. PDC argues that the existence of a power of attorney tends to prove that PDC's conduct was reasonable under the circumstances and is relevant to refute Tire Discounters' accusations that PDC intentionally delayed the construction project.

At this point, the Court declines to exclude this evidence. Whether or not this evidence is admissible will largely depend on the facts developed at trial. Therefore Tire Discounters' motion to exclude all evidence and testimony related to the power of attorney is DENIED.

**B.     MOTION IN LIMINE RE: DEFAULT UNDER SECTION 21 OF THE LEASE**

Next, Tire Discounters seeks to exclude all evidence regarding an alleged default of Tire Discounters pursuant to Section 21 of the Lease [Doc. 50, pgs. 7-11]. Tire Discounters argues that evidence on damages supposedly triggered by a default would be confusing and misleading to the jury by creating the "false impression that this purported breach has caused PDC to suffer hundreds of thousands in contract damages so as to play on juror sympathies." [Doc. 50, pg. 7]. PDC counters such information is relevant to its counterclaim against Tire Discounters for breach of contract, and that it intends to present proof to show how, when, and why it considered Tire Discounters to have defaulted in its obligations under the subject Lease.

The Court has granted Tire Discounters' motion for summary judgment as to PDC's breach of contract counterclaim [*See* Doc. 55]. Therefore, the request to exclude all evidence related to supposed default under Section 21 of the Lease is DENIED as MOOT.

**2.     SECOND MOTION IN LIMINE [Doc. 51]**

Tire Discounters filed a second motion in limine seeking exclusion of several "miscellaneous matters":

A.   That [PDC] not be permitted to blame Knox County for the delay in repairing the collapsed retaining wall and timely commencing construction.

B.   That PDC not be permitted to blame TDOT (Tennessee Department of Transportation) for the delay in completing permitting paperwork and timely commencing construction.

C.   That the Court exclude any reference to the purported denial of PDC's insurance claim for the collapsed retaining wall.

D.   That the Court exclude any reference to the size of Tire Discounters or the law firm of Baker Donelson who represents Tire Discounters in this action.

E.   That the Court exclude any "Golden Rule appeal" to the jury.

**A.      That [PDC] not be permitted to blame Knox County for the delay in repairing the collapsed retaining wall and timely commencing construction.**

Tire Discounters moves to exclude any information regarding Knox County's purported delay in repairing a retaining wall that collapsed on PDC's property because it is "speculative and unsubstantiated" and would only mislead and confuse the jury [Doc. 52, pg. 3]. It further argues that any testimony from PDC representative Tony Cappiello regarding necessary easements or permits to repair the wall would be improper lay opinion in violation of Rule 701 of the Federal Rules of Evidence [*Id.*]. PDC responds that it plans to present testimony from an appropriate representative from the City of Knoxville Department of Engineering who has knowledge of the construction permit files pertaining to easement requirements, and that this information should not be excluded before the proper foundation for admissible can be established at trial [Doc. 54, pg. 1].

The Court agrees with PDC that with the proper foundation, testimony from a representative of the City of Knoxville regarding easements would be relevant. Tire Discounters' motion in section A is DENIED.

**B.      That PDC not be permitted to blame TDOT for the delay in completing permitting paperwork and timely commencing construction.**

Tire Discounters seeks to exclude testimony that "TDOT might have potentially caused delay to the [construction] permitting" as misleading and confusing to the jury [Doc. 52, pgs. 4-5]. It also argues that if PDC seeks to have a witness testify about TDOT's permitting process this will be impermissible opinion testimony under Rules 701 and 702 of the Federal Rules of Evidence because PDC's witnesses have no factual basis for opining on the subject [Doc. 52, pg. 5]. PDC responds that it does not intend to "blame" TDOT for any construction delays but does intend to show that Tire Discounters was aware that TDOT "requested certain paperwork but not convey

that information to [PDC] in a timely fashion." [Doc. 54, pg. 2]. PDC asks the Court to allow it to offer proof or argument related to TDOT's involvement in the issues related to permitting [*Id.*]. The Court finds that information regarding TDOT's involvement in the construction project and permitting requirements would help the jury determine who was responsible for cost overruns, which is central to the dispute, as well as the process for completing permitting paperwork. Therefore, Tire Discounters' motion as to Section B is DENIED.

**C.    That the Court exclude any reference to the purported denial of PDC's insurance claim for the collapsed retaining wall.**

Tire Discounters argues that PDC plans to offer proof that its insurance company denied coverage for repair of the collapsed retaining wall, and that this evidence would be an attempt to garner sympathy with the jury [Doc. 52, pg. 6]. Tire Discounters argues that without the insurance denial letter itself, which would be the best evidence of such denial, any testimony about the insurance claim or denial is inadmissible hearsay [*Id.*]. PDC responds that it does not plan to offer proof that its insurance carrier denied the retaining wall claim [Doc. 54, pg. 2]. However, PDC argues that if Tire Discounters presents evidence that PDC did not want to move forward with the construction project in part because of the "unforeseen cost of repairing the retaining wall," or if Tire Discounters argues that PDC did not "act fast enough in attempt to repair the retaining wall," this would "open the door" for PDC to present evidence that an insurance claim was timely submitted and denied [*Id.*].

The Court finds that any objections to the admissibility of PDC's claim for insurance should be made at trial. Accordingly, the motion in Section C is DENIED.

**D.    That the Court exclude any reference to the size of Tire Discounters or the law firm of Baker Donelson who represents Tire Discounters in this action.**

Tire Discounters argues that any reference to its "large size" at trial would "entice the jury to weigh the relative sizes of the parties so as to improperly assess damages based upon which party has a greater ability to pay." [Doc. 52, pg. 7]. It argues such information would be "extremely prejudicial" to it [*Id.*]. PDC states the size of Tire Discounters and the number of stores it operates is relevant to the calculation of its damages [Doc. 54, pg. 2]. The Court agrees with Tire Discounters that such evidence is not relevant and has the potential to be unfairly prejudicial. Damages calculations for lost revenue, lost profits, and consequential damages could be calculated without such information. Therefore, as to Section D, the motion is GRANTED and any evidence regarding the size of Tire Discounters or its law firm shall be EXCLUDED at trial.

**E.     That the Court exclude any "Golden Rule appeal" to the jury.**

Tire Discounters believes PDC will make a general appeal to the jury that Tire Discounters "should have been more forgiving" of its failure to timely commence construction given the health condition of PDC's principal Tony Cappiello [Doc. 52, pgs. 7-8]. Tire Discounters explains that it is improper for a party to request that jurors "put themselves in the shoes" of a party. PDC responds that it is aware of the prohibitions against such an appeal and does not intend to use it [Doc. 54, pg. 3]. The motion as to Section E is DENIED as moot.

**IV.     CONCLUSION**

For the above stated reasons, Tire Discounters' Motion to Exclude Certain Testimony [Doc. 34] is **GRANTED IN PART** and **DENIED IN PART**. Tire Discounters' Motion in Limine [Doc. 49] is **DENIED**. Tire Discounters' second Motion in Limine [Doc. 51] is **GRANTED IN PART and DENIED IN PART.**

SO ORDERED:

s/Clifton L. Corker
United States District Judge